# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE LUIS PELAEZ, INC., *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> PEARSON EDUCATION, INC., <br><br> Defendant. | 16-cv-5216 <br><br> OPINION |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs Jose Luis Pelaez and Jose Luis Pelaez, Inc. bring this copyright infringement action against Defendant Pearson Education Inc. Now before the Court are the parties' cross motions for summary judgment. ECF Nos. 76-77. For the reasons set forth below, Defendant's motion is **GRANTED** and Plaintiff's motion is **DENIED**.

## I. BACKGROUND[1]

Plaintiff Jose Luis Pelaez ("Pelaez") is a professional photographer and owner of Jose Luis Pelaez, Inc ("Pelaez Inc." and together with Pelaez, "Plaintiffs"). Plaintiffs entered into licensing agreements with Corbis Corporation ("Corbis"), a stock photography agency that serves as a licensing agent for photographers. The agreements allowed Corbis to sub-license Pelaez's photos to end users, including publishers.

Defendant Pearson Education, Inc. ("Defendant") is a publisher of educational materials, including textbooks. In 2001, 2004, and 2007, Defendant and Corbis entered into three separate preferred vendor agreements ("PVAs"). The parties disagree over whether the PVAs constituted unlimited licenses to use Corbis's clients' photos at certain price points or merely pre-established some of the terms that would be applied to subsequent licensing agreements.

At some point between 2009 and 2015, Plaintiffs became aware that Defendant (and other publishers) faced allegations of large-scale copyright infringement. Plaintiffs filed suit against Defendant on August 26, 2016, alleging copyright infringement (Count One) and contributory and/or vicarious copyright infringement (Count Two). Comp., ECF No. 1. The factual allegations are relatively barebones. Essentially, Plaintiffs accuse Defendant of obtaining access to their photos through Corbis and other licensing agencies, then (1) printing unauthorized copies, and, without permission, (2) distributing photos throughout the world, (3) publishing photos in electronic, ancillary, or derivative publications; and (4) publishing the photographs in international editions and foreign publications. *Id.* ¶ 10.

---

[1] The following facts are undisputed unless otherwise noted.

1

The parties originally moved for summary judgment in November 2018. ECF Nos. 43, 45. Defendant requested, and was granted, leave to file a supplemental motion. ECF Nos. 56, 59, 62 (opposition). Defendant also filed a notice of supplemental authority. ECF Nos. 66. In February 2019, Plaintiffs moved to amend their complaint, ECF No. 67. In response, the Court terminated the pending summary judgment motions, ECF No. 75. Next, the Court denied Plaintiffs' motion for leave to amend and invited the parties to refile their cross motions for summary judgement. ECF Nos. 73-74. The parties did so on August 9, 2019, relying on their previous briefing. ECF Nos. 76-77. The parties also submitted various opposition and reply briefs. ECF Nos. 78-82.

## II. STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FRCP 56. A fact is material if its determination might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.* To make this determination, the Court views the facts in the light most favorable to the nonmovant and all reasonable inferences must be drawn in the nonmovant's favor. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The moving party bears the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant can meet this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. *Id.* at 325. If the moving party carries its initial burden, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (citation omitted). "The non-moving party cannot rest on mere pleadings or allegations; rather it must point to actual evidence in the record on which a jury could decide an issue of fact its way." *El v. SEPTA*, 479 F.3d 232, 238 (3d Cir. 2007) (citation omitted). "A party moving for summary judgment on an issue for which it bears the ultimate burden of proof faces a more difficult road . . . . In such a case, if there is a chance that a reasonable factfinder would not accept a moving party's necessary propositions of fact, summary judgment is inappropriate." *Donovan*, 661 F.3d at 185 (citation omitted).

## III. DISCUSSION

Despite all the spilled ink, the issues here are relatively simple: First, does Defendant's alleged conduct constitute a breach of contract or copyright infringement? Second, did Defendant have a valid license to copy the photographs? Third, can Defendant be liable for contributory or vicarious infringement?

### A. *Prima Facie* **Direct Copyright Claim?**

Citing cases from the Second Circuit, Defendant argues that Plaintiffs' allegations, at most, state claims for breach of contract, not copyright infringement. Plaintiffs disagree, arguing that Defendant's use of their copyrighted works beyond the licenses provided constitutes copyright infringement. Plaintiffs are correct with respect to the law controlling their claims.

In a recent precedential opinion, the Third Circuit analyzed whether photographer-plaintiffs were bound by the forum-selection provision in vendor agreements between Corbis

2

and another publisher, McGraw Hill. *In re McGraw-Hill Glob. Educ. Holdings LLC*, 909 F.3d 48, 52 (3d Cir. 2018). In holding the photographers were not bound, the court clarified the elements of a copyright infringement claim: (1) ownership of a valid copyright and (2) copying the constituent elements of the work that are original. *Id.* at 66-67. The court made clear that a *prima facie* case did not require such copying be "unauthorized." *Id.* ("[W]e cannot expect them to plead unauthorized use as part of a *prima facie* case."). Of course, holding a valid license to copy the original work is an affirmative defense to copyright infringement. *See id.* (citing with approval, *Muhammad-Ali v. Final Call, Inc.*, 832 F.3d 755, 761 (7th Cir. 2016) ("[T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement.")); *see also* FRCP 8 (listing "license" as affirmative defense); *Carlin v. Bezos*, No. 14-cv-02406, 2015 WL 12803608, at *4 (E.D. Pa. June 11, 2015), *aff'd*, 649 F. App'x 181 (3d Cir. 2016). But the existence of some limited license (or documents defendants argue amount to licenses) does not preclude copyright holders from suing for infringement. *See In re McGraw-Hill*, 909 F.3d at 61 ("McGraw-Hill is an infringer to the extent it exceeds any license that Krist or a sub-licensor granted it."). Here, Plaintiffs contend Defendant reproduced their copyrighted photographs without a license. Therefore, their claims sound in copyright.[2]

### B. <u>License to Copy Photographs?</u>

The parties agree that in 2001, 2004, and 2007, Corbis and Defendant entered into the PVAs, which set forth at least some of the terms under which Defendant could license photos from Corbis (and its clients). Defendant argues that the PVAs actually grant a license to use Plaintiffs' photos, with such use producing a reciprocal obligation to pay Corbis according to the price schedules. Def. Mot. at 10-16. Plaintiffs disagree, arguing the PVAs merely set forth certain terms that would be incorporated into specific licenses granted via invoices sent from Corbis to Defendant. Pl. Mot. at 8-15. According to Plaintiffs, Defendant did not have a license to use their copyrighted photographs until Defendant received and paid the invoice setting forth the images licensed. *Id.*

Because holding an applicable license is an affirmative defense to Plaintiffs' copyright claims, *see supra* Part III.A; FRCP 8(c)(1), Defendant bears the burden of proof, *El*, 479 F.3d at 238. Therefore, at this stage, "if there is a chance that a reasonable factfinder would not accept [Defendant's] propositions of fact, summary judgment is inappropriate." *Donovan*, 661 F.3d at 185 (citation omitted). Fortunately for Defendant, there is no dispute that Corbis and Defendant agreed to the terms of the PVAs as written. The issue before the Court is how to interpret those terms. And interpreting the unambiguous language of the PVAs is a question of law. *See Fox v. U.S. Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3d Cir. 1982) ("Interpretation of a

---

[2] The cases cited by Defendant are inapposite. First, they are non-binding and rely heavily on a line of cases the Third Circuit specifically declined to adopt. *Id.* at 66 ("But that refusal to concede is not the reason we decline to adopt the *Bourne* rule. Rather, we recognize that on the facts of the cases before us, we could not hold plaintiffs to such a *prima facie* burden." (discussing *Bourne v. Walt Disney Co.*, 68 F.3d 621, 631 (2d Cir. 1995)). Further, even adopting the Second Circuit's reasoning, here, Plaintiff's *claims* sound in copyright. As discussed below, Plaintiffs argue the PVAs do not constitute a license to use their copyrighted photographs. *See infra* Part II.B. Thus, even in the Second Circuit, Defendant's *alleged* conduct constitutes copyright infringement, not merely breach of contract.

3

contract is ordinarily a question of law for the courts. But when the contract is ambiguous, extrinsic evidence may be required to discern its meaning, transforming the question into one of fact to be resolved by the fact finder, except where the evidence and resulting inferences are uncontroverted.").

### 1. *Corbis's Right to Sub-License the Photos*

Before the Court can say whether the PVAs themselves constituted licenses for Defendant to use photographs without prior authorization, the Court must determine whether Corbis was authorized to grant such licenses. Plaintiffs assert they "entered into a series of agreements with . . . Corbis [and a predecessor], which authorized them to sell limited, rights managed licenses to third parties," not licenses to use Plaintiffs' photos without prior permission in perpetuity. Pl. Mot. at 3. Defendant disagrees, arguing Corbis was authorized to, and did, provide licenses to use Plaintiffs' photos without prior authorization through the PVAs.

In the first agreement between Plaintiffs and Corbis (originally signed by another agency and transferred to Corbis), Plaintiffs agreed to allow their agency to "███████████ ███████████." Palaez Decl. Exs. 6-7, ECF No. 47-6-7. In the second agreement, Plaintiffs ███████████ Palaez Decl. Exs. 8 at JLPI v. Pearson 000005, ECF No. 47-8. Therefore, there is no reasonable dispute that Corbis had the authority to license Plaintiffs' photographs in the manner Defendant claims (i.e., granting a license to use the photos without prior authorization, triggering an obligation to report such use to Corbis and pay invoices). *See R/S Assocs. v. New York Job Dev. Auth.*, 98 N.Y.2d 29, 32, 771 N.E.2d 240, 242 (2002) (finding that under New York law (which governs the agreements here), where a contract's "language is clear, unequivocal and unambiguous, the contract is to be interpreted by its own language").

### 2. *2001 PVA*

With respect to the actual PVAs, Plaintiffs argue that:

> At no point does the 2001 Agreement grant [Defendant] permission to use third-party images. Nor does it provide for [Defendant's] copying and distribution of images after exhausting the terms of one-time-use licenses. However, the 2001 Agreement expressly incorporates Corbis's Terms and Conditions, which provide, "Corbis grants [Defendant] the limited rights set forth in the written 'Invoice and License Agreement.' . . . Any use of the Images not set forth in this Agreement shall require the prior written agreement of Corbis."

Pls. Mot. at 11 (ellipses in original). Defendant responds that despite the Terms and Conditions, the PVAs *do* pre-authorize the use of Plaintiffs' images, citing the "Invoicing/Usage Notification" section of the 2001 PVA. Def. Opp. At 17.

Under the header "Invoicing/Usage Notification," the 2001 PVA states:

> Pearson Education agrees to notify Corbis of the image numbers ("The Images") of the images used on a product/title, quarterly. (100 images per quarter for 4 quarters of the term) Invoices will be sent to Pearson Education. Overdue

statements will be sent to Pearson Education after 30 days. Pearson Education is responsible for all payments due.

ECF No. 43-24 at D-JLPI-00006002 ("2001 PVA").

Under Washington law, which governs the terms of the 2001 PVA, "[w]here [a] contract is unambiguous on its face, the meaning of the contract is determined from its language and not from parol evidence." *Matter of Marriage of Gravelle*, 194 Wash. App. 1051 (2016) (quoting *Messersmith v. Messersmith*, 68 Wash. 2d 735, 739, 415 P.2d 82 (1966)). The terms of the 2001 PVA unambiguously allow Defendant to use images under Corbis's authority, then notify Corbis and pay for such use. Therefore, the 2001 PVA provided a license for Defendant to use Plaintiffs' photographs without prior authorization.

Plaintiffs point out that the incorporated Terms and Conditions limit licenses to those set forth in a separate "Invoice and License Agreement." However, the 2001 PVA expressly states: "In the event there is a conflict between the [Terms and Conditions] and this letter Agreement, the unique terms of this letter Agreement will govern." *Id.* at D-JLPI-00006002. The limiting language in the Terms and Conditions conflicts with the express "Invoicing/Usage Notification," language in the 2001 PVA. Therefore, the 2001 PVA language controls, *see id.*, which authorizes Defendant to use Plaintiffs' photographs without prior approval.[3]

### 3.   2004 PVA

The 2004 PVA contains a similar "Invoicing/Usage Notification" term. It states:

Pearson Education agrees to notify Corbis of the Images used on a per usage basis. Pearson Education must include Image IDs within each notice. Corbis will invoice Pearson Education according to this schedule. Overdue statements will be sent to Pearson Education after 30 days. **Pearson Education is responsible for all payments due**.

ECF No. 43-25 at D-JLPI-00006077 ("2004 PVA"). The 2004 PVA also incorporates certain Terms and Conditions, once again with the caveat that "[i]n the event there is a conflict between the T&C and this letter Agreement, the unique terms of this letter Agreement will govern." *Id.* at D-JLPI-00006075. Further, the Terms and Conditions explicitly provide for exceptions "specified in a separate writing signed by Corbis." *Id.* at D-JLPI-00006078.

Under New York law, which governs the terms of the 2004 PVA, *id.* at D-JLPI-00006079, where a contract's "language is clear, unequivocal and unambiguous, the contract is to be

---

[3] *In re McGraw Hill* does not mandate otherwise. Here, there is no reasonable dispute that Corbis had the authority to sublicense Plaintiffs' work to Defendant. As part of that authority, Corbis and Defendant were free to select what law would govern. Therefore, to the extent the PVAs provide a license under the applicable state law, Defendant is not liable for copyright infringement. And even if the Court were to consider the language of the PVAs ambiguous, under Washington law, "where it is doubtful whether words create a promise (i.e., contractual obligation) or an express condition, courts shall interpret them as creating a promise." *Microsoft Corp. v. Motorola, Inc.*, 864 F. Supp. 2d 1023, 1034 (W.D. Wash. 2012) (citation omitted). Therefore, under the applicable state law, use of the photographs under the 2001 PVA triggered an obligation to report and pay for such use.

5

interpreted by its own language." *R/S Assocs.*, 98 N.Y.2d at 32, 771 N.E.2d at 242. The 2004 PVA explicitly provides for Defendant to notify Corbis of images "used on a per usage basis." *Id.* at D-JLPI-00006077. Therefore, the 2004 PVA provided a license for Defendant to use Corbis-licensed work, then notify Corbis and pay the associated invoice at the pre-determined price point. Even if the terms were ambiguous, the Court would still read the notice and payment provision as a contractual obligation upon exercising the rights granted by the 2004 PVA, not a precondition to obtaining a license. *See Graham v. James*, 144 F.3d 229, 237 (2d Cir. 1998) ("Generally speaking, New York respects a presumption that terms of a contract are covenants rather than conditions.").

### 4. *2007 PVA*

The 2007 PVA states:

> Pearson Education agrees to notify Corbis of the Images used on a per usage basis. Pearson Education agrees to provide Corbis with the following information for all project and licensing notices: book title, author, edition, ISBN, release date, project code (if any), correct billing party from Pearson, and correct image id's. Failure to provide proper information may result in invoicing errors and delays for which Pearson Education will be responsible for based on the Corbis Terms and Conditions. Corbis will invoice Pearson Education according to this schedule. Overdue statements will be sent to Pearson Education after 30 days. Pearson Education is responsible for all payments due.

ECF No. 43-26 at D-JLPI-00006049 ("2007 PVA").

Once again, the 2007 PVA permits Defendant to use certain images, then "notify Corbis of the Images used on a per usage basis." *Id.* The Court will not construe this language to endorse copyright infringement by Defendant. Instead, it provided a license for Defendant to use the images subject to the 2007 PVA, with such use obligating Defendant to notify Corbis and pay for their use. *See id.* at D-JLPI-00006052 (mandating New York law applied); *Graham*, 144 F.3d at 237; *R/S Assocs.*, 98 N.Y.2d at 32, 771 N.E.2d at 242. As before, the contradictory language in the Terms and Conditions is expressly inapplicable. *See* 2007 PVA at D-JLPI-00006047 ("In the event there is a conflict between the T&C and this letter Agreement, the unique terms of this letter Agreement will govern.").

Because the 2001, 2004, and 2007 PVAs provide a license for Defendant to use Plaintiffs' copyrighted works without prior authorization, summary judgment is **GRANTED** on Plaintiff's direct copyright claims (Count One).[4] The Court expresses no view on potential claims resulting from Defendant's alleged failure to pay under the PVAs.

---

[4] Contrary to Plaintiffs' protests, *In re McGraw-Hill* does not mandate otherwise. In that case, the Third Circuit found the photographer-plaintiffs bringing copyright claims were not bound by the forum selection clause in a contract between Corbis and McGraw Hill "because they are not intended beneficiaries of the agreements, nor are they closely related parties." *In re McGraw-Hill*, 909 F.3d at 52. That question is distinct from the one presented here: did Corbis grant a license for Defendant to use Plaintiffs' copyrighted photographs? As discussed, the PVAs provided Defendant with such a license under applicable state laws. Further, Plaintiffs arguments regarding electronic and international

6

## C. Evidence Supporting Contributory or Vicarious Liability?

In addition to their direct infringement claims, Plaintiffs allege Defendant is liable for contributory and/or vicarious copyright infringement. Compl. ¶¶ 16-26, 30-32. Plaintiffs allege that Defendant, without authorization, reproduced and distributed their photographs to third parties, who republished them without obtaining a license. *Id.* ¶¶ 17-19. Plaintiffs further allege Defendant knew the third parties (1) would reproduce Plaintiffs' work without authorization; (2) were continuing to reproduce and distribute the photos without authorization; and (3) were paying Defendant royalties based on the number of sales of certain translated works, which included the photographs. *Id.* ¶¶ 21-25. Finally, Plaintiffs allege Defendant had the right and ability to control the third parties and profited directly from the transmission of photographs. *Id.*

"To establish a claim of contributory infringement, a plaintiff must show: (1) a third party directly infringed the plaintiff's copyright; (2) the defendant knew that the third party was directly infringing; and (3) the defendant materially contributed to or induced the infringement." *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 387 (3d Cir. 2016). Similarly, "[v]icarious infringement occurs when one profits from direct infringement while declining to exercise a right to stop or limit it." *Id.* at 388. "To establish vicarious infringement, a plaintiff must prove that the defendant had (1) the right and ability to supervise or control the infringing activity; and (2) a direct financial interest in such activities." *Id.* Defendant moves for summary judgment, arguing there is no evidence of direct infringement by a third party. Def. Mot. at 36-37. Further, as to the contributory claim, Defendant argues there is no evidence that it knew third parties were infringing or that it materially contributed or induced such infringement. *Id.* at 37-39.

### 1. *Direct Infringement by Third Party*

With respect to Defendant's argument that there is no evidence of third party, direct infringement, Plaintiffs' respond that "[n]ot only does [Defendant's] motion fail to mention the fact that *its own documents* reveal numerous unlicensed distributions . . . to foreign third parties, but it also attempts to improperly shift its burden of proof onto [Plaintiff]." Opp. at 39. Plaintiff is mistaken with respect to the burden. As the moving party, Defendant does bear the burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp.*, 477 U.S. at 323. However, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

At trial, for both the contributory and vicarious claims, Plaintiff would bear the burden of demonstrating direct infringement by a third party. *See Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 23 (E.D. Pa. 1992) ("In a copyright infringement action, as in any other civil action, the burden of proof is on the plaintiff to establish its prima facie case."). Therefore, because Defendant points to an absence of evidence, Plaintiff must come forward with record evidence from which a reasonable jury could conclude a third party directly infringed. *See Celotex Corp.*, 477 U.S. at 325. While Plaintiffs argue Defendant's "*own documents* reveal numerous unlicensed distributions of [Plaintiffs'] Photographs to foreign third parties," Pl. Opp.

---

distribution do not mandate a contrary result, as the PVAs expressly provided for such use.

at 39, Plaintiffs only cite a single paragraph of its own lawyer's declaration, which in turn ▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Opp. at 39 (citing Murphy Decl. ¶ 5 (redacted in ECF No. 52-3; unredacted in ECF No. 53 & 53-1 (Ex. D)). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See* Murphy Decl. ¶ 5, ECF No. 53. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Murphy Decl. Ex. D, ECF No. 53-1. However, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[5] *Id.* Plaintiffs fail to point to any evidence of that fact. Therefore, Plaintiffs failed to meet their burden of citing record evidence that counters Defendant's assertion that there is no evidence of direct, third-party infringement. *See Celotex Corp.*, 477 U.S. at 323 (finding summary judgment justified when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof"); *see also* FRCP 56(c). Accordingly, summary judgment is **GRANTED** on Plaintiffs' contributory and vicarious copyright claims (Count Two).

### 2. *Defendant Knew Third Parties Were Infringing and Materially Contributed to or Induced the Infringement*

Defendant alternatively argues there is no evidence that it "knew of any purported infringement of [Plaintiffs'] photographs by third parties" or that it "intentionally induced or encouraged infringement by a third party." Def. Mot. at 37-38. Once again, Plaintiffs argue Defendant's "own documents reveal that it actively provided publications containing third-party content to foreign affiliates for use in additional textbook adaptations, translations, and editions." Pl. Opp. at 40. But Plaintiffs' brief cites no record evidence or even a statement of undisputed facts. Accordingly, Plaintiffs failed to meet their burden. *See Celotex Corp.*, 477 U.S. at 323.

Even considering Plaintiffs' opposition to the paragraphs Defendant cites in its own statement of material facts, no genuine dispute exists. *See* Def. Reply Statement of Undisputed Facts ¶¶ 112-116 (listing responses and objections), ECF No. 54-1. Other than citing the document already discussed above, *see* Murphy Decl. Ex. D, ECF No. 53-1, Plaintiff only points to one additional paragraph of its counsel's declaration and a "claims summary." *See* Murphy Decl. ¶ 11, ECF No. 53 (sealed version) (unsealed version at ECF No. 52-3); Claims Summary, ECF No. 46-1. The cited paragraph is argumentative and does not constitute record evidence that Defendant *knew* of, and *intentionally induced* or *encouraged* infringement by a third party. At most, it accuses Defendant of direct infringement. *But see supra* Part III.A-B. But that does not satisfy the elements of contributory infringement. *See Leonard*, 834 F.3d at 387 (listing elements). Likewise, the cited "claim summary" says ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See id.*; Claims Summary, ECF No. 46-1.

---

[5] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Defendant makes clear that it frequently authorized others to copy its own material (e.g., the text of a textbook), but not the copyrighted work owned by others contained therein (e.g., photos). *See* Def. Mot. at 37-38. In any event, Plaintiffs did not dispute the fact that the claims report does not identify third-party direct infringers. *See* Pl. Opp. Statement of Undisputed Facts ¶ 111 (showing Plaintiff did not dispute statement), ECF No. 52-1.

Because (1) Plaintiff failed to sufficiently rebut Defendant's argument that there is no evidence to support their contributory and vicarious copyright infringement claims,[6] and (2) Defendant is entitled to its license defense as a matter of law, Defendant's motion for summary judgement is **GRANTED** and the Court need not address the remaining issues.

## IV. CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, ECF No. 77, is **GRANTED** and Plaintiff's motion, ECF No. 76, is **DENIED**. An appropriate order follows.

Date: November 21, 2019

WILLIAM J. MARTINI, U.S.D.J.

---

[6] Technically, Defendant's arguments only applied to 163 of the 974 contributory claims asserted. *See* Def. Mot. at 35-36. However, they apply equally to the remaining 811 claims and, in any event, Plaintiffs failed to respond to Defendant's arguments regarding those 811 claims. *See* Pl. Opp. at 37-40 (responding to Section I of Defendant's brief except with respect to the arguments discussed above).